**MARION MORTGAGE CO. et al. v. EDMUNDS et al.**

No. 6818.

Circuit Court of Appeals, Fifth Circuit.

April 7, 1933.

Edward E. Fleming, Richard H. Hunt, D. H. Redfearn, and Mitchell D. Price, all of Miami, Fla., for appellants.

Henry K. Gibson, Bart A. Riley, and S. P. Robineau, all of Miami, Fla., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

Without any notice, general receivers were appointed for all the assets of ten corporations and one individual. Ten days later the defendants who are appellants moved to vacate the order and gave notice for a hearing. At the hearing they presented a full answer under oath and motions to dismiss the bill. The court clarified the former order so as to exclude from its operation two defendants not appealing, and by consent dismissed the bill as to a third one. An order was then passed, which recited that the court found it impossible to hear the matter completely at that time, and that it was satisfied that no one would suffer before the return about a month later of the other District Judge, and "ordered and decreed that said case be continued until the return of Judge Ritter from his vacation." No injunction of any sort was granted. An appeal was taken from the order appointing the receivers, and also from that last referred to, and supersedeas was granted.

It is moved to dismiss the appeal on the ground that neither order is one from which an appeal lies under 28 USCA § 227, the first because ex parte and not upon a hearing, and the second because a mere order of continuance. The pertinent part of section 227 reads: "Where, upon a hearing in a district court, or by a judge thereof in vacation, an injunction is granted, continued, modified, refused, or dissolved by an interlocutory order or decree, or an application to dissolve or modify an injunction is refused, or an interlocutory order or decree is made appointing a receiver, or refusing an order to wind up a pending receivership or to take appropriate steps to accomplish the purposes thereof, such as directing a sale or other disposal of property held thereunder, an appeal may be taken from such interlocutory order or decree to the circuit court of appeals." Whether an ex parte order appointing a receiver is one "upon a hearing" so as to be appealable has not been authoritatively settled. An affirmative answer is given in Joseph Dry Goods Co. v. Hecht (C. C. A.) 120 F. 760, and Haight & Freese Co. v. Weiss (C. C. A.) 156 F. 328, 334, and a negative one in Pacific Northwest Packing Co. v. Allen (C. C. A.) 109 F. 515, and Root v. Mills (C. C. A.) 168 F. 688. An appeal from such an order was upheld in Re McKenzie, 180 U. S. 536, 21 S. Ct. 468, 45 L. Ed. 657, with no discussion of its ex parte character, but there was also an order refusing to vacate the receivership which is said in Pacific Northwest Packing Co. v. Allen to be necessary to render the ex parte order appealable. We incline to think that the nature of the order is important. If it grants on emergency a temporary receivership and provides for an early hearing touching its permanency, the order is but tentative, and does not represent the settled action of the court, and like a temporary restraining order is not appealable. But, if it appoints permanent receivers deliberately and finally with no provision for a hearing, there is a refusal in advance to hear which may well be considered sufficient to justify an appeal. The present order is an unqualified appointment of receivers with instruction to take immediate possession of all property of the defendants, requires reports each sixty days, authorizes the employment and discharge of laborers and agents, the doing of business, and the defense of suits against the defendants. It concludes with a provision that "each defendant is allowed ten days from service of a copy of this order to show cause why the receivership should not be made permanent," but it does not order service nor appoint any time or place for a hearing. We need not and do not decide whether this order was at once appealable. If it was not, because the parties affected had not sufficiently exhausted their means of relief in the lower court, the later order removed that deficiency. The appellants were then present, offering to be heard. The judge, after a partial hearing, refused to complete it and continued the

case to be resumed at an unfixed time in the future and before another judge who was not expected to return for a month. The necessary and direct effect was to keep the receivers in office and to confirm their appointment for an indefinite period. An appeal cannot be prevented by thus creating the receivership ex parte and then refusing to complete the hearing of a motion to vacate it. An unappealable temporary restraining order is by Equity Rule 73 (28 USCA § 723) and by 28 USCA § 381 guarded against abuse by strict limitation of its life and by requiring the hearing on it to be given precedence over all business except older matters of the same character. A receivership which without a hearing takes property from its possessor is more drastic, and, if wrongful, is of more disastrous consequence, than a restraining order, and should be even more jealously safeguarded. The order here was not merely the continuance of a case, but operated to reappoint the receivers upon a hearing within the meaning of section 227.

We think discretion was abused, both in the original appointment and in its prolongation. By ancient practice receivers were appointed only after answer. Now the power is established to appoint them upon the filing of the bill and without notice, but such an appointment should regularly be a temporary one with an early hearing provided touching its permanency. Ford v. Taylor (C. C.) 137 F. 149. Even a temporary appointment ought never to be made without notice unless notice is impracticable because the person proceeded against is out of the jurisdiction or in hiding, or there is imminent danger clearly shown of loss or destruction or concealment of property and protection cannot be afforded by a restraining order or in any other way. Mann v. Gaddie (C. C. A.) 158 F. 42; Huff v. Bidwell (C. C. A.) 151 F. 563; Joseph Dry Goods Co. v. Hecht (C. C. A.) 120 F. 760; Cabaniss v. Reco Mining Co. (C. C. A.) 116 F. 318; North America Land & Timber Co. v. Watkins (C. C. A.) 109 F. 101; Lehman v. Trust Co., 57 Fla. 473, 49 So. 502; Henderson v. Reynolds. 168 Ind. 522, 81 N. E. 494, 11 L. R. A. (N. S.) 960, 11 Ann. Cas. 977; Pycatt v. Prudential Ins. Co., 38 Okl. 15, 131 P. 914, 37 Ann. Cas. 1915C, 894; Burton v. Pepper, 116 Miss. 139, 76 So. 762. And the emergency must not have been caused by the complainant's failure to act more promptly. Henderson v. Reynolds, supra; High on Receivers (4th Ed.) § 14. For

its request to appoint receivers without notice, this bill puts forward as the specific reason that the complainants feared that the defendants would, if notified, attempt to dispose of the parcels of real estate described in the bill by leasing them under an authority granted by a state court in a case to which complainants were not parties. That authority was more than a month old when the bill was filed. If the bill was itself not a lis pendens sufficient to preserve the complainants' rights in the property described in it, an injunction would have sufficed to prevent any wrong disposition of it, and the first prayer of the bill was for that relief. There was no sudden emergency requiring a receivership without notice for ten corporations that were going concerns. The flimsiness of the pretext specially urged that Florida System, Inc., would make subleases which would work irreparable damage appears in that at the hearing this corporation was by consent dismissed from the bill. Discretion was again abused in continuing the receivership by the last order. The answer of appellants appears to swear off completely the equity of the bill. If the answer is true, there is not sufficient ground for the general receivership. It then devolved on the complainants to overcome the answer and sustain the bill by evidence. If they were prepared with their evidence— and they should have been—the court ought to have given this matter preference over ordinary business and heard it. If they were not prepared, or from any other necessity the hearing had to be postponed for a substantial time, the receiverships should have been vacated or suspended until proofs were made that severally justified them.

We have on this appeal jurisdiction to deal also with the motions to dismiss the bill. Metropolitan Water Co. v. Kaw Valley Drainage District, 223 U. S. 519, 32 S. Ct. 246, 56 L. Ed. 533; Smith v. Vulcan Iron Works, 165 U. S. 518, 17 S. Ct. 407, 41 L. Ed. 810; Cabaniss v. Reco Mining Co. (C. C. A.) 116 F. 318. We will not express an opinion on the contention touching estoppel by judgment, which can more properly be dealt with when the evidence comes in, but only on the contentions that the bill does not show federal jurisdiction, is without equity, and is multifarious. The only ground of federal jurisdiction being diversity of citizenship, it is said that it does not appear that each complainant owns in his own right bonds or beneficial certificates exceeding $3,000 in each one of the sixty-two trusts in-

252

volved, and that the complainants as a bondholders' committee are but agents for the other bond and certificate holders who are not named, whose citizenship is not stated, and the several amounts' of whose interests do not appear. Bullard v. City of Cisco (C. C, A.) 62 F.(2d) 313, is cited. The allegations of ownership as a bondholders' committee we put aside as a mere conclusion without the facts, for no contract or assignment is set forth, and we cannot tell whether the complainants are assignees or agents. It is alleged in the bill that each of the four complainants owns in his own right and as the original purchaser more than $3,000 of bonds or beneficial certificates under several of the trusts, and one or the other of them owns some interest under each of the trusts. But these interests do not fix the amount in controversy, for this bill is not a suit to recover on the bonds and certificates. There is no prayer for such a judgment, but only for a recovery by each trust of what has been taken from it, to be returned to the several trustees who are parties. It is like a stockholders' bill to enforce a corporate right which the corporate officers refuse to assert. The amount in controversy is the corporate right and not the stockholder's interest in the corporation, which latter is necessary only to justify his suing in the corporation's behalf. Johnson v. Ingersoll (C. C. A.) 63 F. (2d) 86; Hutchinson Box Board & Paper Co. v. Van Horn (C. C. A.) 299 F. 424; Larabee v. Dolley (C. C.) 175 F. 365; Hill v. Glasgow R. Co. (C. C.) 41 F. 610. The same principle has been applied to a suit by a fraternal benefit certificate holder to assert the rights of his association. Haynes v. Fraternal Aid Union (D. C.) 34 F.(2d) 305. Where the corporation lacks the citizenship for federal jurisdiction over its controversy, it seems odd to permit a stockholder having but a slight interest to supply the necessary diversity of citizenship; but there are safeguards against collusion in Equity Rule 27 (28 USCA § 723). He is treated in the suit as a trustee pro hac vice, and the citizenship of a representative who is a substantial party to the record controls though he have no personal interest. American Bible Society v. Price, 110 U. S. 61, 3 S. Ct. 440, 28 L. Ed. 70; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179. The present case is of course to be distinguished from a creditor's bill in which the object of the petitioning creditor is to collect his debt, which must without aggregation with others be of jurisdictional

amount. Lion Bonding Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871. As to each trust in which any complainant has any interest there is therefore competent representation. And, while the amount of the claim of each trust is not separately and distinctively set forth, the general allegations of extensive misappropriation and the special instances given fairly show sums much greater as to each than $3,000. If, however, there be some trust whose claim is less than $3,000, yet because of the intermingling and shortage of assets below discussed, that trust would have a right to intervene to get its share of the fund to be administered; and, having a right to intervene, its presence in advance as a complainant does no harm if the controversies of other trusts enable the federal jurisdiction to attach. General Finance Corporation v. Keystone Credit Corporation (C. C. A.) 50 F.(2d) 872; Huff v. Bidwell (C. C. A.) 151 F. 563. It is true that several claims of many against one, or of one against many, may not be aggregated to make the jurisdiction. Elliott v. Empire Gas Co. (C. C. A.) 4 F.(2d) 493. If each of these trusts had a simple demand against one or more of the defendants, there ought to be as many suits as there are demands, and they could not be aggregated to sustain this bill. Bullard v. City of Cisco (C. C. A.) 62 F. (2d) 313. But, so far as concerns the persons sued, the several controversies with them of a single trust may be tied together into one by allegations of conspiracy or fraudulent cooperation. McDaniel v. Traylor, 212 U. S. 428, 29 S. Ct. 343, 53 L. Ed. 584; Woodmen of the World v. O'Neil, 266 U. S. 292, 45 S. Ct. 49, 69 L. Ed. 293. Such allegations are profusely made here, as will appear in discussing the equity and multifariousness of the bill. Federal jurisdiction is sustained.

The bill alleges the general situation that was detailed in Trust Co. of Fla. v. Illick (C. C. A.) 54 F.(2d) 286, to which reference is made. Some of the trust mortgages as there described still stand, and some have been foreclosed and the security bought in by the acting trustee for the bondholders, and a beneficial certificate issued to each showing his interest in the property. It is alleged that Marion Mortgage Company, the original trustee in all the trusts here involved, by fraudulent collusion before and after foreclosure with the other corporate defendants, all owned and managed by the defendant G. L. Miller, has converted and misapplied moneys belonging to each trust,

which have been distributed among these several defendants and which now constitute the entire assets of each, and that all such assets are therefore trust funds, but that the tracing of the funds of each trust will be difficult and complicated, and, since the assets are insufficient to repay all, each trust is interested in the accounting of each other trust and must be represented in making it, so that an elaborate cross-accounting and marshaling involving all the defendants and each trust is necessary, and can be adequately had only in equity. Since every trustee is alleged to be colluding and is proceeded against, the beneficiaries must represent the trusts, and, since they are very numerous, the complainants, being beneficiaries and also a committee chosen to represent many others whose interests aggregate $750,000, offer themselves as representatives of the several classes of beneficiaries and sue for themselves and others similarly situated. The relief prayed beside injunction and receivership is the accounting and the establishment of what is due to each trust, and the marshaling of the assets of the several insolvent defendants. It is urged that the complainants are but simple contract creditors, without judgment and not entitled to extraordinary relief in equity. Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Lion Bonding Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871. They have no judgments, but they are not simple contract creditors who should exhaust their legal remedies and touching whose demands the defendants would have a right to a jury trial at law. They claim for their trusts, not a mere debt, but the equitable ownership of land and trust money which can be traced into the assets of the defendants, with a lien thereon in equity because of the commingling. Of such a cause of action equity has primary and full jurisdiction. Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004; Wyman v. Wallace, 201 U. S. at page 234, 26 S. Ct. 495, 50 L. Ed. 738; High on Receivers (4th Ed.) § 9. There is equity in the cross-accounting sought; and the alleged commingling of trust funds which must be unraveled and the insufficiency of assets to pay all saves the bill from multifariousness. We therefore hold that the bill is not on its face subject to general dismissal; but that, in view of the answer, the receiverships should be set aside unless and until a proper case therefor is proven.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.