**McCRACKEN et al. v. BROWN & ROOT, Inc. et al.**

Civ. No. 322.

United States District Court,
W. D. Arkansas, Harrison Division.

Nov. 20, 1951.

Ernie Wright, Mountain Home, Ark., for plaintiffs.

Richard C. Butler (of House, Moses & Holmes), Little Rock, Ark., Ben H. Powell, Jr. (of Powell, Wirtz & Rauhut), Austin, Tex., for defendants.

JOHN E. MILLER, District Judge.

The complaint in this case was originally filed in the Chancery Court of Marion County, Arkansas, and the case was removed to this court by the defendants.

In their complaint the plaintiffs allege that the defendants have been operating a stone quarry about one and one-half miles from Flippin, Marion County, Arkansas, for the production of aggregate for use in the construction of Bull Shoals Dam on White River in Marion County, Arkansas; that in the process of such production over the last three years prior to the commencement of the action the defendants "carelessly and negligently produced powerful and violent explosions by the use of dynamite or other high explosives and such explosions have caused violent and powerful vibrations in the earth and in the air, for distances of several miles from said quarry site, and the force of such vibrations has resulted in substantial damages to buildings and premises owned by the various plaintiffs herein, and located in and near Flippin in Marion County"; and that said damages to plaintiffs' respective buildings and premises were the "direct and proximate result of the careless and negligent acts of the defendants in producing and causing said violent explosions". Allegations of the damage to the property of the various plaintiffs follow, from which it appears that there is no individual claim for more than $3,000, the various claims ranging from $150 to $3,000. The complaint recites that the cause of action of each plaintiff arises out of the same series of actions of the defendants, and that they have joined to prevent a multiplicity of suits. And, the prayer is for judgment in favor of each plaintiff in the sum of the alleged damage to the property of each.

The allegations of the removal petition sufficiently show complete diversity of citizenship. Concerning the amount in controversy defendants allege that damages are claimed in an aggregate amount of $38,800 and that: "Plaintiffs have united in one complaint to enforce a single right in which they have a common and undivided interest. The claims of all plaintiffs are held in the same right and depend for their validity upon the same questions of fact and law. The amount in controversy in said cause of action exceeds the sum of $3,000.00 exclusive of interest and costs as is alleged in plaintiffs' complaint."

Also contained in the removal petition is an allegation that the United States of America is a real party in interest and a necessary party to the disposal of the suit because (1) the quarry where the blasting took place is and has been the property of the United States; (2) the blasting and crushing schedule was established and controlled by the United States, and the operation of the quarry was under the supervision and control of the United States; and (3) the relation between the defendants (other than the individual defendant, M. H. Slocum) and the United States is such that the latter will have to pay in excess of ½ of any judgment recovered. It is then alleged that "this is a civil action alleging a claim for injury to property of the plaintiffs caused by the negligent or wrongful act or omission of an employee of the United States Government while acting within the scope of his office or employment".

It appears from the allegations of the removal petition that removal is sought on the grounds that the case filed in the State court is one within the original jurisdiction of the United States District Courts because (1) there is diversity of citizenship and the requisite amount in controversy;

and (2) the United States is a real party in interest as a party defendant.

After filing their removal petition and on the same date, defendants filed in this court a motion to join the United States as co-defendant. Subsequent thereto defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The plaintiffs have filed a motion to remand. The motion to remand alleges that the claims of the various plaintiffs are separate and distinct and that the claim of no plaintiff exceeds the sum of $3,000, and denies that the United States is a party to this cause of action, real or otherwise.

Statements in support of and in opposition to the motion to remand have been filed in accordance with Local Rule No. 8, and since the motion challenges its jurisdiction, it is the duty of the court to determine the issues raised by the motion. And, in view of this challenge to its jurisdiction, no action has been taken by the court on the motions filed by the defendants.

■ Considering the grounds for removal in the order set forth in the removal petition, the court turns first to the question of whether the action filed in the State court is within this court's original jurisdiction because of diversity of citizenship and the requisite amount in controversy. In making this determination the court must examine the status of the case as disclosed by plaintiffs' complaint. As expressed by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 291, 58 S.Ct. 586, 591, 82 L.Ed. 845: "Moreover, the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove."

■ An examination of plaintiffs' complaint reveals that the various plaintiffs seek to recover from the defendants for damage to their property allegedly caused by the negligent conduct of the defendants. The claim of each plaintiff owner or owners is based upon damage to his or their property, as distinguished from the property of the other plaintiff owner or owners, and in no instance does the claim of any plaintiff owner or owners, as to his or their particular property, exceed the sum of $3,000. And, while certain questions of fact and law will be common to all plaintiffs, it is quite evident that all such questions will not be. There will be separate questions as to ownership, the existence, nature and extent of damage to the various plaintiffs' property, and the proof in this regard will necessarily vary. The claims are separate and distinct demands, and the plaintiffs are asserting a right to relief severally and not jointly. Such a joinder of plaintiffs is permissible under the State practice, Ark.Stats.1947 § 27–806, but this in no wise changes the separate and distinct nature of the claims asserted.

The allegations of the removal petition sufficiently show complete diversity, but the requisite amount in controversy is involved only if the various claims can be aggregated. The rule governing aggregation is succinctly stated by the Supreme Court in Pinel v. Pinel, 240 U.S. 594, 596, 36 S.Ct. 416, 417, 60 L.Ed. 817, as follows: "The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

As above stated, these plaintiffs are not attempting to enforce a single title or right in which they have a common and undivided interest, but are asserting separate and distinct demands. The cases relied upon by defendants involve entirely different factual situations. In Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 730, 83 L.Ed. 1111, plaintiffs sued for themselves and other members of the American Society of Composers, Authors and Publishers, an unincorporated association founded to license performance of copyrighted music for profit and otherwise protect the copyrights, to obtain an injunction against the enforcement of a Florida statute aimed at

combinations fixing the price for the privilege of rendering privately or publicly for profit copyrighted musical compositions. The court held that "the matter in controversy—the value of the aggregate rights of all members to conduct their business through the Society—exceeds $3,000 in value". The case was a true class action involving the common and undivided interest of the members to license their music through the Society. See Moore's Federal Practice, Vol. 1, 1947 Cumulative Supplement, Sec. 8.06, page 208, for a discussion of this case. The instant case is not a class suit, and the plaintiffs here are not asserting any joint claim, nor are they seeking to protect or enforce any common and undivided interest. In Sovereign Camp Woodman of the World v. O'Neill, 266 U.S. 292, 45 S.Ct. 49, 69 L.Ed. 293, and in McDaniel v. Traylor, 212 U.S. 428, 29 S.Ct. 343, 53 L.Ed. 584, discussed in the O'Neill case, the decisive factor prompting the court to permit aggregation was allegations of a fraudulent conspiracy. In the O'Neill case, supra, plaintiff sought an injunction against the defendants prosecuting separate suits against plaintiff in the State court, and in as much as it was alleged that the various suits, which were for claims undisputed as to amount, were pursuant to a "fraudulent" conspiracy, this was sufficient to tie the claims together for jurisdictional purposes, making their aggregate amount the value of the matter in controversy. The instant case, of course, is not a suit to enjoin the prosecution of claims pursuant to a fraudulent conspiracy. No issue of a conspiracy is raised, and the holding in the O'Neill case is in no wise controlling here. Here, there are separate and distinct claims for less than $3,000, permissively joined in one action under the State practice. The matter in controversy in the case of each claim is plaintiff's claim for damages allegedly caused by defendants' tortious conduct, and the amount in controversy is the sum claimed by the plaintiff. No issue of any plaintiff's good faith is raised. See Edelhertz v. Matlack, D.C.M.D.Pa., 42 F.Supp. 309; Mitchell v. Great American Indemnity Co., D.C.W.D.La., 87 F.Supp. 961.

It follows, therefore, that since the various claims cannot be aggregated, the amount in controversy does not exceed the sum of $3,000, exclusive of interest and costs, and the case is not one within the original jurisdiction of this court because of diversity of citizenship and the requisite amount in controversy.

■ As stated above, defendants allege a second ground for jurisdiction in their removal petition, that the United States is a real party in interest as a party defendant. In their argument in opposition to the motion to remand the defendants state the basis of their contention that the United States is an indispensable or at least a necessary party defendant as follows:

"Since the question of whether the suit is one against the United States is determined by the question of the effect of the judgment, that this is such a suit is obvious when the effect on the United States of any judgment secured by these plaintiffs is considered. The work from which the alleged tortious conduct arose was carried on under a contract with the United States by which a sort of joint venture was created between these defendants and the United States. The defendants furnished rock aggregate to the United States from Government owned land under supervision of Government agents, at a unit price fixed by the contract. However, this unit price is only a tentative figure. The unit price total will be computed, but then the defendants' actual costs will be figured, 12% of these costs will be added to that figure, and the difference between this sum and the amount computed at the unit price will be divided equally between the defendants and the United States. Obviously, should the plaintiffs recover any judgment, the amount of such judgment will represent a cost of the job. The net effect of the judgment will be that the United States will pay in excess of one-half of any amount recovered. * * *

"* * * This is a suit sounding in tort against the United States, and jurisdiction is conferred on the court by virtue of the provisions of 28 U.S.C. § 1346(b) wherein certain types of suits against the United States, including actions of this

184

nature, are authorized to be brought in the Federal District Courts."

Again looking at the status of the case as disclosed by plaintiffs' complaint, it appears that plaintiffs are asserting no claim against the United States by virtue of any such contract or tort alleged to have been committed by any employee of the United States. Whether they could if they so desired is both speculative and immaterial for present purposes. Neither is this a case, as was the situation in some cases cited by defendants, where the United States appears in a suit between other parties to protect the interests of the Government. And, neither is this a case where a Governmental official is named as the party defendant, but the essential allegations and relief sought show that while the suit is nominally against the official it is in reality one against the Government and the Government is the real party in interest. Even under defendants' theory, they will be liable for approximately one-half of any amount recovered. Plaintiffs have brought suit against these defendants personally seeking to place responsibility on them for the consequences of certain acts that they performed or caused to be performed, and neither the essential allegations of plaintiffs' complaint nor the relief sought sufficiently reveals that the defendants are mere nominal parties and the Government is the real party in interest.

 Furthermore, even if it be assumed that the Government is an indispensable party defendant, although not so named in the complaint, the defendants are in no better position. As stated by the defendants in their statement, the jurisdiction of this court over a case of this kind, wherein the United States is a defendant, is based on 28 U.S.C.A. § 1346(b). By virtue of that section the United States has consented to be sued on certain tort claims, but *exclusive* jurisdiction of civil actions on such claims is conferred on the United States District and enumerated Territorial Courts. Thus, the United States has not consented to be sued on such

claims in the State courts. Therefore, if the Government was an indispensable party to the suit as filed in the State court, that court had no jurisdiction, and this court acquired none by removal, even though it might have had jurisdiction had the suit been brought here originally. This principle is well stated in Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671, as follows: "But there are in addition two fundamental objections to the jurisdiction: First, the United States, an indispensable party to suits to restrain or set aside orders of the Commission, was not joined, and could not be, for it has not consented to be sued in state courts. Secondly, such suits are required to be brought in a federal District Court. * * The fact that this was a suit to set aside an order of the Commission did not appear on the face of the bill; but it became apparent as soon as the motion to dismiss was filed. Jurisdiction cannot be effectively acquired by concealing for a time the facts which conclusively establish that it does not exist. As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."

It follows from the above that this case was removed improvidently and without jurisdiction, and, therefore, must be remanded to the State court. And, by virtue of the conclusion reached as to its jurisdiction, the court takes no action on defendants' motions to join the United States as co-defendant and to dismiss.

An order remanding the case to the Chancery Court of Marion County, Arkansas, from whence it was removed, will be entered.